1  **DAVID R. REED, State Bar #62479**
   Attorney at Law (Automatictrials@yahoo.com)
2  3699 Wilshire Blvd. #850
   Los Angeles, Ca. 90010
3  (310) 854-5246
   (760) 342-7927 fx
4
   Attorney for: PEDRO AVENA CUNA
5

6                    **UNITED STATES DISTRICT COURT**

7                   **CENTRAL DISTRICT OF CALIFORNIA**

8

9  UNITED STATES OF AMERICA, )   NO:  CR-09-230(A) SVW
                             )
10         Plaintiff,        )
                             )   POSITION OF DEFENDANT
11             -vs-          )   RE SENTENCING FACTORS
                             )
12  PEDRO AVENA CUNA,        )
                             )
13         Defendant.        )   Date: November 16, 2009
                             )   Time: 11:00 a.m.
14  _____/

15       To the above-entitled Court, and Assistant United States Attorney, Justin Rhodes:

16       Comes now David R. Reed, counsel for defendant, PEDRO AVENA CUNA and files

17  his Position Re Sentencing Factor Brief.

18       Defendant disagrees with the guideline calculations in the pre-sentence report ("PSR")

19  only with respect to the issue that defendant should receive a minor role.  The Total base

20  offense level would be 28 for "Amount" - 2 for "Minor Role"  - 3 for "Acceptance" - 2 for

21  the "Safety Valve"  = Level 21.   With a criminal history category of I, the range is **37 - 46**

22  **months.**

23       However, pursuant to 3553 factors, defendant should receive a 24 month sentence and

24  be deported back to his family in Mexico.

25

26  Dated: November 3, 2009          Respectfully submitted,

27                                   /s/ David R. Reed
                                     _____
28                                   David R. Reed, Attorney for Mr. Cuna

                                     1

1          MEMORANDUM OF POINTS AND AUTHORITIES

2          The case presents a pathetic and tragic story.    Defendant was raised in poverty on a

3     ranch in Nayarit, Mexico.    He has six siblings and his parents and the family scratched out

4     a living working on a dirt-dry ranch far from the city.    Defendant loves his father and his

5     father became ill with kidney disease.    With his parents knowledge and consent, defendant

6     was sent to Tijuana to try to make some money to help with his dad's illness and support his

7     family back on the ranch.

8          Defendant got a job in a tortilla factory while 17 years old.    He accidentally got his left

9     hand stuck in a flour-crushing machine and it mangled his left hand.[1]    Defendant then lost

10    the use of his left hand.  The hand is numb, scarred and when you touch the hand, it's full of

11    sweat.

12         Defendant was fired from the factory.    Defendant could not get a job, so he illegally

13    crossed into the United States without telling his family.  Defendant figured he could more

14    readily find some kind of work in the United States and get some treatment for his hand.  At

15    first he found menial work and a place to sleep at a friend's home in Compton.    Then

16    defendant lived with three other friends in Downey.

17         However, defendant eventually had problems finding work, as he could not use his left

18    hand and he has no skills.  Defendant saw a flyer in a Laundromat offering a room at low

19    rent.    He responded to it and it turned out to be a residence in which many of the co

20    conspirators lived.  Defendant saw that the people who lived at the residence were dealing

21    drugs.   By this time defendant had just turned 18.

22         To eat and send a little money home, defendant was recruited into the drug trafficking

23    conspiracy.    Defendant clearly was a minor player.    Defendant had no equity interest in

24    this operation whatsoever and took orders.    The probation report gives the impression that

25    the conspiracy operated a heroin factory containing large stainless-steel mixing vats, ala the

26

27
      [1]    If the court wishes to inspect the left hand at sentencing it certainly may, but it is
28         not a pretty sight.

1   Wonder Bread factory, and defendant "processed and packaged" massive amounts of heroin.

2   But in truth, there was a little table in the corner of a disheveled apartment, which housed

3   seven to ten other aliens in a room, and defendant, along with other starving, lowly

4   employees would sprinkle some lactose onto some powder and put the mixture into some

5   balloons.

6        The probation report gives the impression that once the balloons were packaged up,

7   defendant walked into a giant dispatch room akin to the Communications Division at Parker

8   Center, and "coordinated the delivery" of massive quantities of heroin to various individuals

9   throughout Southern California.  That is far from what happened.  To begin with, defendant

10  was 18 years old at the time, in a foreign country, could not speak English, and would get lost

11  on the freeways.  On one or two occasions when he was ordered to make a delivery of some

12  heroin to a location, he would call on a cell phone provided to him to get directions from one

13  or two other individuals regarding where to meet up to transfer balloons of heroin.    It did

14  not happen very often but sometimes defendant would get lost and he had to coordinate the

15  delivery with others.     All defendant did was mix some balloons of heroin for the leaders

16  of the conspiracy, then upon orders, delivered some balloons to other individuals in Los

17  Angeles.

18       Finally, when the take-down occurred, agents raided the residence where defendant was

19  allowed to sleep in a drafty corner of the living room on the floor on a blanket and agents

20  found 369 grams of heroin in a bedroom, which was not defendant's.    However, naturally,

21  because this case is a conspiracy case, defendant was legally responsible for that amount of

22  heroin found in the bedroom he was not allowed to enter.

23       This is all this pathetic young defendant did.  Defendant turned 19 four months ago.

24  After defendant's arrest he became frightened.   Defendant has never been in trouble and

25  placed into a situation like this and it is a real wake up call.   Defendant did the safety valve

26  and passed.

27       Defendant must be punished, but due to his youth, his medical disability, and the fact

28  that once deported he swears to the court he will never come back to our country, there is no

1     need to send him to a federal prison for 46 months as recommended by the government.   A

2     24 months sentence is minimally sufficient.

3

4                                    CONCLUSION

5          Defendant asks for a 24 month sentence.

6

7     Dated: November 3, 2009                Respectfully submitted,

8

9                                            /s/ David Reed

10                                           _____

11                                           David Reed for Mr. Cuna.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28